**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

NADEEM HASSAN,

|                          |                          |
|--------------------------|--------------------------|
| Petitioner,              | 9:26-cv-00319 (BKS)      |

v.

PAMELA BONDI, in her official capacity as U.S. Attorney
General; PHILIP RHONEY, in his official capacity as
Deputy Field Office Director, Buffalo Field
Office, U.S. Immigration & Customs Enforcement;
TAMMY MARICH, in her official capacity as Field
Office Director, Buffalo Field Office, U.S. Immigration &
Customs Enforcement; TODD LYONS, in his official
capacity as Acting Director, U.S. Immigration and Customs
Enforcement; and KRISTI NOEM, in her official capacity
as Secretary of Homeland Security,

Respondents.

---

**Appearances:**

*For Petitioner:*
Matthew K. Borowski
Borowski Witmer Immigration Lawyers
4343 Union Road
Buffalo, New York 14225

*For Respondents:*
David M. Katz
Assistant United States Attorney
United States Attorney's Office
100 South Clinton Street
Syracuse, New York 13261

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

I.    **INTRODUCTION**

Petitioner Nadeem Hassan is a noncitizen who has been present in the United States since 2023. (Dkt. No. 1, ¶ 1). On February 26, 2026, Petitioner was taken into custody by Immigration and Customs Enforcement ("ICE") in Albany, New York. (Dkt. No. 1, ¶ 1; Dkt. No. 7-3, ¶ 15). Petitioner filed a petition the same day under 28 U.S.C. § 2241 for a writ of habeas corpus asserting that: (1) his detention under 8 U.S.C. § 1225(b)(2), without any process, was unlawful; and (2) his detention without a bond hearing or other process violated his Fifth Amendment right to due process. (Dkt. No. 1, ¶¶ 47–55). Petitioner sought an order granting his immediate release, or, in the alternative, granting his immediate release pending a bond hearing, and an award of attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412. (*Id.* at 17–18). Upon review of the petition, the Court issued an Order: directing Respondents to show cause why the Petition for a writ of habeas corpus should not be granted; setting a briefing schedule; scheduling oral argument; and prohibiting Respondent from moving Petitioner outside the jurisdiction of the Northern District of New York while this matter is pending. (Dkt. No. 2).

On March 13, 2026, following oral argument, and upon consideration of the parties' submissions, (Dkt. Nos. 1, 7), the Court ordered Respondents to provide Petitioner an individualized bond hearing within ten days, at which the Government would bear the burden of proving by clear and convincing evidence that Petitioner was either a flight risk or danger to the

2

community. (Dkt. No. 8).[1] The Court advised the parties that a written decision would follow. This is that decision.

## II.     BACKGROUND[2]

On October 9, 2023, Petitioner "entered the United States without inspection . . . at the California border, after fleeing his home country of Pakistan." (Dkt. No. 1, ¶ 2; *see* Dkt. No. 7-3, ¶ 4 ("Petitioner is a native and citizen of Pakistan.")). "At the time of entry, he was not apprehended or inspected." (*Id.* ¶ 3). Petitioner does not have any criminal convictions, has filed an I-589 application for asylum, and has been issued a work permit. (*Id.* ¶¶ 4–5).

"On February 26, 2026, ICE issued and signed a Form I-200 Warrant for Arrest of Alien for Petitioner." (Dkt. No. 7-3, ¶ 6; *see* Dkt. No. 7-4, at 6–7 (Form I-200 Warrant)). ICE "conducted a targeted enforcement operation for Petitioner" the same day in Albany, New York. (Dkt. No. 7-3, ¶ 7). With "a photograph and physical description of Petitioner as well as information about his physical address," "ICE officers proceeded to Petitioner's suspected residence." (*Id.* ¶¶ 7–8).

At approximately 11:00 a.m., ICE officers "observed a male matching Petitioner's description exit the residence and enter a vehicle which was registered to Petitioner." (Dkt. No. 7-4, at 3; Dkt. No. 7-3, ¶ 8). ICE officers "followed Petitioner's vehicle until it stopped," "approached the vehicle[,] confirmed Petitioner's identity," and "asked Petitioner to put his vehicle in park." (Dkt. No. 7-3, ¶ 9 (quoting Dkt. No. 7-4, at 3)). Petitioner "repeatedly shifted the car in reverse and drive," before putting "the vehicle in park and exit[ing] the vehicle." (*Id.* (internal quotation marks omitted)). "Upon exiting . . . the vehicle," an ICE officer advised

---

[1] The Government filed a status report stating that a bond hearing was held on March 20, 2026, and bond was set in the amount of $15,000. (Dkt. No. 9).

[2] Unless otherwise noted, the facts are not disputed.

Petitioner that "he was under arrest." (Dkt. No. 7-4, at 3). Petitioner "then fled on foot across a busy city intersection" but was apprehended by ICE officers "after a brief foot chase." (*Id.*). Petitioner "actively resisted being placed into handcuffs" and officers gave "[v]erbal commands to stop resisting." (*Id.*). "During transport, [Petitioner] was again advised he was under arrest and served a copy of an I-200 Warrant of arrest," (*id.*), which specified "two bases for his apprehension: (a) 'the execution of a charging document to initiate removal proceedings against the subject'; and (b) 'statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. Immigration law.'" (Dkt. No. 7-3, ¶ 14 (quoting Dkt. No. 7-4, at 6)). ICE also "served Petitioner with a Form I-862, Notice to Appear in Immigration Court." (Dkt. No. 7-3, ¶ 12; *see* Dkt. No. 7-4, at 8–11 ("Notice to Appear")).

Petitioner was taken to the "ICE-ERO Albany Sub Office," where he "verbally admitted alienage, which was confirmed through law enforcement database queries." (Dkt. No. 7-4, at 3). While in custody, "ICE officers electronically biometrically confirmed his identity," and served Petitioner "with a second Form I-200, Warrant for Arrest of Alien, which added," as additional grounds for his apprehension, Petitioner's "biometric confirmation" and that federal database record checks affirmatively indicated that Petitioner "either lack[ed] immigration status or notwithstanding such status is removable under U.S. Immigration law.'" (Dkt. No. 7-3, ¶ 14 (quoting Dkt. No. 7-4, at 7)).

Petitioner is presently being held at Clinton County Jail in Plattsburgh, New York.[3] (Dkt. No. 7-3, ¶ 15).

---

[3] Although a bond hearing was held on March 20, 2026, and bond was set, the record does not indicate whether Petitioner has posted bond or been released.

### III.    JURISDICTION

"28 U.S.C. § 2241(c)(3) authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *6, 2018 U.S. Dist. LEXIS 98712, at *15 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

### IV.    DISCUSSION

#### A.    Statutory Basis for Detention

The parties dispute the statutory basis for Petitioner's detention. Petitioner, who had resided in the United States for more than two years at the time of his arrest, asserts that his detention was pursuant to 8 U.S.C. § 1226(a), which provides for discretionary authority to detain noncitizens who are "already in the country," "pending a decision on whether [they are] to be removed from the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018) (citing 8 U.S.C. § 1226). Section 1226(a) allows a noncitizen to "request a bond hearing before an immigration judge," *O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 400 (E.D.N.Y. 2025) (citing 8 C.F.R. §§ 1236.1(c)(8), (d)(1)), and "secure his release if he can convince the . . . immigration judge that he poses no flight risk and no danger to the community," *id.* (quoting *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019)). Respondents assert that Petitioner was detained under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2)(A). (Dkt. No. 7, at 14). Section 1225(b)(2)(A) requires the mandatory detention of a noncitizen "who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond doubt entitled to be admitted," 8 U.S.C. § 1225(b)(2)(A), and which,

unlike Section 1226(a), "says [nothing] whatsoever about bond hearings," *Jennings*, 583 U.S. at 297.

This Court, along with others, has already rejected Respondents' argument that noncitizens who previously entered the United States and are living in the United States are subject to arrest and mandatory detention under Section 1225(b)(1) and has concluded that Section 1226(a), including its bond hearing requirements, applies to such detentions.[4] *See Alcon Gaspar v. Akshar*, No. 26-cv-00118, 2026 WL 699369, *6–7, 2026 U.S. Dist. LEXIS 51783, *14–18 (N.D.N.Y. Feb.17, 2026) (citing cases).

Respondents acknowledge this Court's prior holding but argue that Petitioner falls within Section 1225 because, unlike the petitioner in *Alcon Gaspar*, who was detained and released shortly after his illegal entry and then re-detained approximately six years later, Petitioner's February 26, 2026, arrest was his first contact with immigration authorities since his 2023 illegal entry. (Dkt. No. 7, at 14); *see Alcon Gaspar*, 2026 WL 699369, at *1, 2026 U.S. Dist. LEXIS 51783, at *3. To the extent Respondents are suggesting that since Petitioner's February 26, 2026 arrest is his first interaction with immigration authorities, he is an "applicant for admission" and "seeking admission" within the meaning of Section 1225(b)(2)(A), they have not cited any legal authority that would support their position. Moreover, courts have rejected lack of contact with

---

[4] Divided panels of the Fifth and Eighth Circuits have found that noncitizens already present in the United States are subject to mandatory detention under Section 1225(b)(2)(A) and not entitled to bond hearings. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026) (reversing district court's orders directing bond hearings under Section 1226(a)(2), finding mandatory detention provisions of Section 1225(b)(2)(A) applied to noncitizens, even if they had been living in the United States for many years); *Avila v. Bondi*, No. 25-3248, --F.4th --, 2026 WL 819258, at *6, 2026 U.S. App. LEXIS 8744, at *17 (8th Cir. Mar. 25, 2026) (finding mandatory detention provisions in Section 1225(b)(2)(A) applied to noncitizen who entered the United States without inspection or admission in 2016 and was arrested in 2025 and detained without bond hearing). However, the Seventh Circuit has found the government was unlikely to succeed on the argument that the mandatory detention provisions of Section 1225(b)(2)(A) applied to noncitizens already present un the United States. *See Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061–62 (7th Cir. 2025) (finding that DHS was not likely to succeed on the argument that there is no distinction "between a noncitizen at the border and one already in the United States" and that a noncitizen already in the United States in subject to mandatory detention under Section 1225(b)(2)(A)).

immigration authorities as a basis for applying the mandatory detention provisions of Section 1225. *See Acuapan v. Bondi*, No. 26-cv-00384, 2026 WL 507889, at *3, 2026 U.S. Dist. LEXIS 37878, at *9 (E.D.N.Y. Feb. 24, 2026) ("The fact that Petitioner did not have contact with immigration authorities upon re-entry . . . has no bearing on the statutory basis for his detention, as courts have consistently held that noncitizens who enter without such contact are still subject to § 1226.") (citing cases); *see also R.P.L. v. Maldonado*, No. 25-cv-6886, 2025 WL 3731864, at *1–2, 2025 U.S. Dist. LEXIS 266020, at *2 (E.D.N.Y. Dec. 26, 2025) (finding Section 1226 applied where the petitioner had been living in the United States for "decades" and whose 2025 arrest was "his first encounter with immigration authorities"). This Court likewise finds Petitioner's lack of prior contact with immigration authorities provides no basis for departing from its conclusion that Section 1226 governs the detention of a noncitizen residing in the United States.

Further supporting this conclusion in this case is ICE's use of a Form I-200 warrant to arrest Petitioner. As other courts have observed, the Form I-200 warrant cites Sections 236 and 287 of the Immigration and Nationality Act, (Dkt. No. 7-4, at 6), which correspond to Section 1226, not the mandatory detention provisions in Section 1225, *see Bonilla v. Bondi*, No. 26-cv-757, 2026 WL 485283, at *3, 2026 U.S. Dist. LEXIS 35652, at *6 (E.D.N.Y. Feb. 20, 2026) (finding "an additional problem with Respondents' invocation of Section 1225(b)(2) to justify" detention where "nothing in the record shows that ICE arrested and detained [the petitioner] under Section 1225(b)(2) rather than Section 1226(a)" and "[b]y contrast, the [Form I-200] warrant reflects that [the petitioner] was arrested pursuant to sections 236 and 287 of the Immigration and Nationality Act . . . which correspond to 8 U.S.C. §§ 1226 and 1357 . . . not 8 U.S.C. § 1225(b)(2)") (quotation marks omitted). The use of the warrant therefore undermines

Respondents' position that Petitioner is being detained pursuant to Section 1225(b)(2). Respondents argue that a warrant has no "bear[ing] on the Government's authority to detain Petitioner under" Section 1225(b)(2)(A) and does not "foreclose the conclusion that § 1225(b)(2)(A) is the statute that authorizes Petitioner's detention." (Dkt. No. 7, at 14–15). But when raised following a noncitizen's arrest pursuant to a Form I-200 Warrant, courts have found such arguments—that Section 1225(b)(2)(A) was, in fact, the basis for detention—to be improper post-hoc justifications for detention. *See Mejia-Pina v. Bondi*, No. 26-cv-986, 2026 WL 482635, at *3, 2026 U.S. Dist. LEXIS 35357, at *6 (E.D.N.Y. Feb. 20, 2026) (rejecting the respondents' argument that the petitioner was being detained under Section 1225(b)(2) as improper post-hoc justification where Form I-200 Warrant reflected arrest pursuant to provisions corresponding to Section 1226, not Section 1225) (citing cases). Accordingly, the Court finds no reason to depart from its reasoning and conclusion in *Alcon Gaspar*, and finds Petitioner's detention is under Section 1226(a).

### B.    Due Process Required

The Court next considers whether Petitioner's detention violates due process. The Due Process Clause of the Fifth Amendment prevents the Government from depriving any person of "life, liberty, or property without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This protection "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. The "essence of due process is the requirement that 'a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171–72 (1951)

(Frankfurter, J., concurring)). Habeas review is available to challenge "the lawfulness of detention when it is first imposed" as well as "to challenge whether, at some point, an ongoing detention has become unlawful." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.* at 850 (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83, 786 (2008)).

In evaluating procedural due process, courts apply the "three-factor balancing test as provided in *Mathews v. Eldridge*": "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Velasco Lopez*, 978 F.3d at 851 (quoting *Mathews*, 424 U.S. at 335).

As to the first factor, Petitioner's "interest in being free from imprisonment" is "the most significant liberty interest there is," *id.*, and it "cannot be abridged without 'adequate procedural protections," *Singh v. Maldonado*, No. 26-cv-00019, 2026 WL 233216, at *9, 2026 U.S. Dist. LEXIS 17311, at *27 (E.D.N.Y. Jan. 29, 2026) (quoting *Zadvydas*, 533 U.S. at 690). Petitioner has established his liberty interest. *See id.*, 2026 WL 233216, at *9, 2026 U.S. Dist. LEXIS 17311, at *27 (finding the petitioner's "liberty interest" in being free from imprisonment was clearly established). Further, there is no evidence that Petitioner received adequate procedural protections before he was detained. "Detention under 1226(a) must be premised on an individualized custody determination based on the noncitizen's dangerousness and flight risk." *Campbell v. Almodovar*, No. 25-cv-09509, 2025 WL 3538351, at *11, 2025 U.S. Dist. LEXIS

256202, at *30 (S.D.N.Y. Dec. 10, 2025) (citing *Velasaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2000)); *see also* 8 C.F.R. § 1236.1(c)(8) (stating, as relevant here, "[a]ny officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). Here, however, Respondents maintain since ICE was exercising its authority under Section 1225, it did not need a specific reason to issue an arrest warrant as to a specific noncitizen, and explained at oral argument that they were not claiming a change in circumstances prompted Petitioner's arrest and detention; they simply claim that an ICE issued a warrant and conducted an operation to apprehend and detain a noncitizen. Thus, the Court finds the first *Mathews* factor weighs strongly in Petitioner's favor. *See*, *e.g.*, *Yao v. Almodovar*, No. 25-cv-9982, 2025 WL 3653433, at *2, * 11, 2025 U.S. Dist. LEXIS 261200, at *26 (S.D.N.Y. Dec. 17, 2025) (finding, notwithstanding use of arrest warrant, that ICE's detention of the petitioner was "discretion-free" and therefore "abridged his rights under § 1226 and violated due process").

The second factor—"the risk of an erroneous deprivation . . . through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"—also weighs in Petitioner's favor. *Velasco Lopez*, 978 F.3d at 851 (internal quotation marks omitted). Respondents appear to suggest that here, Petitioner dropped the ball, pointing out that there is no evidence that "Petitioner requested or was denied a bond hearing prior to commencing suit." (Dkt. No. 7, at 16). However, as the Government acknowledged at oral argument, when noncitizens are detained under Section 1226, they receive a notice of detention form with a box they can check to request a bond hearing. And here, as the Government further acknowledged, there is no indication that Petitioner received a form, or was apprised of a channel through

10

which, to request a bond hearing. Thus, Respondents' suggestion that there were procedural safeguards available to Petitioner is without merit.

Respondents further assert that Petitioner was given a "'Class Action Notice' informing Petitioner about 'a ruling that certain immigration detainees may be unlawfully detained and may seek release on bond or conditional parole under 8 U.S.C. § 1226(a)'" through a "bond hearing upon . . . request." (Dkt. No. 7, at 16 & n.6 (quoting Dkt. No. 7-4, at 12)). However, Respondents cite no authority for the proposition that a class action notice affords Petitioner procedural due process in the context of an arrest and detention. Thus, because the procedure Respondents used involved no exercise of discretion and there is no evidence that Petitioner had an opportunity to request a bond hearing challenging his detention, the risk of erroneous deprivation of Petitioner's liberty is high.

The third factor in the *Mathews* analysis requires the Court to consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. It is well-established that "'the Attorney General's discretion to detain individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate governmental purpose,'" and that "[t]he Government has interests in 'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community.'" *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) (first quoting *Velasco Lopez*, 978 F.3d at 854; and then quoting *Zadvydas*, 533 U.S. at 690). "'[I]n striking the appropriate due process balance the final factor to be assessed is the public interest,'" which "include 'the administrative burden and other societal costs that would be associated with' the additional process." *Velasco Lopez*, 978 F.3d at 855 (quoting *Mathews*, 424 U.S. at 347).

Here, Respondents have not articulated any public interest served through the mandatory (non-discretionary) detention, with no opportunity for a bond hearing, of a noncitizen like Petitioner, who has a work permit and has been living and working in the United States for more than two years. (*See* Dkt. No. 7, at 15 (arguing that "[t]he applicable and mandatory duty to detain imposed by § 1225(b)(2)(A) overrides any other, generalized procedure under which requests for bond can be entertained.")). The Court therefore concludes that Respondent's interest in Petitioner's detention is minimal. *See Crespo Tacuri v. Genalo*, No. 25-cv-06896, 2026 WL 35569, at *7, 2026 U.S. Dist. LEXIS 1766, at *20 (E.D.N.Y. Jan. 6, 2026) ("[T]he government's interest in continued detention is slight insofar as petitioner was detained without an individualized custody determination that evaluated dangerousness and flight risk or any articulated change in circumstances").

Accordingly, the Court finds that Respondents' "ongoing detention of Petitioner with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates his due process rights," *Valdez*, 803 F. Supp. 3d at 219, and must therefore consider the appropriate remedy.

### C.    Appropriate Remedy

"Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008). However, "release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene*, 553 U.S. at 779.

Petitioner seeks immediate release, or immediate release pending a bond hearing. (Dkt. No. 1). The Government argues that the circumstances of this case are unlike those in *Alcon Gaspar* and that immediate release is not justified, but that if the Court finds Petitioner is entitled to relief, a bond hearing should be ordered. (Dkt. No. 7, at 10–11).

Here, Petitioner had not engaged with immigration authorities at or near the time of entry and had been detained less than a day at the time he filed the petition. Moreover, there is evidence that Petitioner attempted to flee upon being told he was under arrest. Despite the opportunity to file a reply, Petitioner did not contest this evidence. In general, noncitizens "detained under § 1226(a) receive bond hearings at the outset of detention," *Jennings*, 583 U.S. at 306, and the Court finds under the circumstances of this case, that a bond hearing is the appropriate remedy, *see Romero Perez v. Francis*, No. 25-cv-8112, 2025 WL 3110459, at *3, 2025 U.S. Dist. LEXIS 219356, at *9 (S.D.N.Y. Nov. 6, 2025) (ordering a bond hearing before an Immigration Judge); *Sun v. Almodovar*, No. 25-cv-9262, 2025 WL 3241268, at *3, 2025 U.S. Dist. LEXIS 230613, at *6 (S.D.N.Y. Nov. 20, 2025) (ordering "individualized bond hearing to be conducted before an Immigration Judge"). The Court further finds that in absence of any individualized assessment or identifiable government interest regarding Petitioner's initial detention, due process requires that the Government bear the burden of demonstrating dangerousness or flight risk by clear and convincing evidence at any bond hearing. *Lieogo v. Freden*, No. 25-cv-06615, 2025 WL 3290694, at *5–6, 2025 U.S. Dist. LEXIS 232722, at *12–15 (W.D.N.Y. Nov. 26, 2025) (reviewing *Mathews* factors and finding, inter alia, no evidence of individualized assessment supporting the petitioner's detention, and noting that detention was due solely to "policy change reversing decades of past practice," and ordering bond hearing and assigning burden of proving "dangerousness or flight risk by clear and convincing evidence" to the respondents); *see also Quintanilla v. Decker*, No. 21-cv-417, 2021 WL 707062, at *3, 2021 U.S. Dist. LEXIS 32633, at *9 (S.D.N.Y. Feb. 22, 2021) (joining the "overwhelming consensus of judges in this district in concluding that the Government should bear the burden to deny

liberty at any Section 1226(a) bond hearing, regardless of the noncitizen's length of detention" (emphasis added)).

## V.      CONCLUSION

Accordingly, it is

**ORDERED** that the Petition for a writ of habeas corpus (Dkt. No. 1) is **GRANTED**; and it is further

**ORDERED** that the Court incorporates herein its prior Order, (Dkt. No. 8); and it is further

**ORDERED** that Petitioner's request for reasonable attorney's fees and costs under the EAJA is **GRANTED** and any request for such fees and costs shall be filed by April 20, 2026, with any response filed by May 4, 2026; and it is further

**ORDERED** that the Clerk of the Court enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

Dated: <u>April 1, 2026</u>
       Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

14